1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   BRIAN WHITAKER,                          No.  2:21–cv–0493–KJM–KJN PS

12                      Plaintiff,            ORDER & FINDINGS AND
                                             RECOMMENDATIONS
13        v.
                                             (ECF No. 19)
14   ZAFAR SHEIKH,

15                      Defendant.

16

17            Presently pending before the court is plaintiff Brian Whitaker's motion for default

18   judgment against defendant Zafar Sheikh, who is the only named defendant in this action.[1]  (ECF

19   No. 19.)  Defendant failed to file an opposition to the motion, despite an extension of time, and

20   the motion was submitted without oral arguments pursuant to Local Rule 230(g).  (ECF No. 21.)

21            For the following reasons, the court recommends that plaintiff's motion for default

22   judgment be GRANTED on the terms outlined below.

23   I.       **BACKGROUND**

24            Plaintiff initiated this action on March 18, 2021, alleging violations of the Americans with

25   Disabilities Act of 1990, 42 U.S.C. §§ 12101 et seq. ("ADA") and California's Unruh Civil

26   Rights Act, Cal. Civ. Code §§ 51 et seq.  (ECF No. 1.)  On April 19, 2021, plaintiff filed a First

27   ─────────────────

28   [1]  This motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule
     of Civil Procedure 72, and Local Rule 302(c)(19).

                                                    1

1   Amended Complaint to amend the named defendant from Sheikh Jewelers to the current

2   defendant, Zafar Sheikh d/b/a Sheikh Jewelers. (ECF No. 6 ["FAC"].)  As alleged in the FAC,

3   defendant owns a business establishment and place of public accommodation known as Sheikh

4   Jewelers, which is located at 1151 Galleria Blvd., Roseville, California.  (FAC ¶¶ 1-3, 9.)

5   Plaintiff, who is quadriplegic and uses a wheelchair, patronized Sheikh Jewelers in March 2021

6   and found no wheelchair-accessible sales counters.[2]  (Id. ¶¶ 8-14.)  Plaintiff "wanted to return and

7   patronize the business subsequent to his original visit but was specifically deterred due to his

8   actual personal knowledge of the barriers" and uncertainty about the existence of other barriers.

9   (Id. ¶ 8, 20.)  Plaintiff seeks injunctive relief and nominal damages under the ADA; statutory

10  damages under the Unruh Civil Rights Act; and attorneys' fees, litigation expenses, and costs.

11  (Id. at 7.)

12          On March 29, 2021, plaintiff personally served copies of the original complaint and

13  summons on then-defendant Sheikh Jewelers, through its agent.  (ECF No. 4.)  On May 18, 2021,

14  plaintiff served defendant Zafar Sheikh via substituted service by delivering a copy of the

15  summons and FAC to a sales representative at Sheikh Jewelers and then mailing copies to the

16  same address.  (ECF No. 8.)

17          Defendant failed to answer or otherwise respond, and on July 30, 2021, at plaintiff's

18  request, the Clerk of the Court entered the default.  (See ECF Nos. 13, 14.)  On September 27,

19  2021, plaintiff filed the instant motion for default judgment.  (ECF No. 19.)  Defendant did not

20  respond to the motion.  The court vacated the October 28, 2021 hearing and provided defendant

21  an additional opportunity to oppose.  (ECF No. 21.)  As ordered by the court, plaintiff served a

22  copy of the order on defendant by mail on October 25, 2021.  (ECF No. 22.)  Defendant still has

23  not opposed plaintiff's motion or otherwise appeared in this action.  Plaintiff's motion requests

24  judgment awarding him all relief sought in the FAC, specifically (A) an order for defendant to

25  provide ADA-compliant wheelchair-accessible counters, (B) $4,000 in statutory damages, and

26

27  [2] The complaint does not state the specific date of plaintiff's visit.  In support of the motion for
    default judgment, plaintiff avers that he visited Sheikh Jewelers on March 4, 2021.  (ECF
28  No. 19.4, Whitaker Decl. ¶ 3.)

1  $3,077 in attorneys' fees and costs.  (ECF No. 19.1 at 6; ECF No. 19.3 at 10; ECF No. 19.8

2  (Proposed Judgment).).

3  **II.**     **LEGAL STANDARD**

4          Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party

5  against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend

6  against the action.  See Fed. R. Civ. P. 55(a).  However, "[a] defendant's default does not

7  automatically entitle the plaintiff to a court-ordered judgment."  PepsiCo, Inc. v. Cal. Sec. Cans,

8  238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25

9  (9th Cir. 1986)).  Instead, the decision to grant or deny an application for default judgment lies

10  within the district court's sound discretion.  Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.

11  1980).  In making this determination, the court considers the following factors:

12                    (1) the possibility of prejudice to the plaintiff, (2) the merits of
                      plaintiff's substantive claim, (3) the sufficiency of the complaint,
13                    (4) the sum of money at stake in the action[,] (5) the possibility of a
                      dispute concerning material facts[,] (6) whether the default was due
14                    to excusable neglect, and (7) the strong policy underlying the
                      Federal Rules of Civil Procedure favoring decisions on the merits.
15

16  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Default judgments are ordinarily

17  disfavored.  Id. at 1472.

18          As a general rule, once default is entered, well-pleaded factual allegations in the operative

19  complaint are taken as true, except for those allegations relating to damages.  TeleVideo Sys., Inc.

20  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin.

21  Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs,

22  285 F.3d 899, 906 (9th Cir. 2002).  In addition, although well-pleaded allegations in the

23  complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the

24  pleadings, and claims which are legally insufficient, are not established by default."  Cripps v.

25  Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d

26  1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir.

27  2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law);

28  Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not

1  be entered on a legally insufficient claim").  A party's default does not establish the amount of

2  damages.  Geddes, 559 F.2d at 560.

3  **III.**     **DISCUSSION**

4      **A.  Appropriateness of the Entry of Default Judgment Under the *Eitel* Factors**

5          The undersigned finds that the weight of the Eitel factors entitles plaintiff to default

6  judgment on both claims asserted.

7          1.  Plaintiff is prejudiced by defendant's non-responsiveness.

8          The first Eitel factor considers whether plaintiff would suffer prejudice if default

9  judgment is not entered, and such potential prejudice to plaintiff militates in favor of granting a

10  default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Absent entry of default judgment,

11  plaintiff would be without another recourse to recover from defendant for the alleged violations.

12  Accordingly, the first Eitel factor favors the entry of a default judgment.

13          2.  Plaintiff's substantive claims are meritorious and sufficiently pleaded in the FAC.

14          The court considers the second and third factors—the merits of plaintiff's substantive

15  claims and the sufficiency of the complaint—together due to the relatedness of the two inquiries.

16  The court must consider whether the allegations in the complaint are sufficient to state a claim for

17  relief.  See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175.  Here, plaintiff

18  seeks recovery for violations of the ADA and California's Unruh Civil Rights Act.  (See ECF

19  No. 6 ("FAC") at 4-6.)

20          *a.     ADA*

21          Title III of the ADA provides "[n]o individual shall be discriminated against on the basis

22  of disability in the full and equal enjoyment of the goods, services, facilities, privileges,

23  advantages, or accommodations of any place of public accommodation by any person who owns,

24  leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "To

25  prevail on a Title III discrimination claim, [the plaintiff] must establish that: (1) he is disabled

26  within the meaning of the ADA; (2) [the defendant] is a private entity that owns, leases, or

27  operates a place of public accommodation; and (3) [the defendant] discriminated against him by

28  denying him public accommodations because of his disability."  Lopez v. Catalina Channel

1    Express, Inc., 974 F.3d 1030, 1033 (9th Cir. 2020); see 42 U.S.C. §§ 12182(a)-(b)).  In the

2    context of existing facilities, the third element, discrimination, can be satisfied by showing "a

3    failure to remove architectural barriers . . . where such removal is readily achievable." Id.

4    § 12182(b)(2)(A)(iv); see Lopez, 974 F.3d at 1034; Chapman v. Pier 1 Imports (U.S.) Inc., 631

5    F.3d 939, 945 (9th Cir. 2011) (en banc).  The ADA defines "readily achievable" as "easily

6    accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C.

7    § 12181(9).

8           The first and second elements of plaintiff's Title III claim are easily met here.  Plaintiff's

9    quadriplegia is a disability under the ADA because it is a physical impairment that substantially

10   limits major life activities, such as walking.  (FAC ¶ 1.)  See 42 U.S.C. § 12102(2)(A).  Sheikh

11   Jewelers is a sales establishment that qualifies as a place of public accommodation under the

12   ADA.  (Id. ¶¶ 2-3, 9.)  See 42 U.S.C. § 12181(7)(E) (listing "a bakery, grocery store, clothing

13   store, hardware store, shopping center, or other sales or rental establishment" as a place of public

14   accommodation).

15          Whether plaintiff adequately pleads the third element, discrimination, is a closer question

16   because of split authority regarding what (if anything) an ADA plaintiff must plead on the issue

17   of an architectural barrier's "readily achievable" removal.  It is clear that to ultimately "succeed

18   on a ADA claim of discrimination on account of one's disability due to an architectural barrier,"

19   to show discrimination, "the plaintiff must also prove that:  (1) the existing facility at the

20   defendant's place of business presents an architectural barrier prohibited under the ADA, and

21   (2) the removal of the barrier is readily achievable." Parr v. L & L Drive-Inn Rest., 96 F. Supp.

22   2d 1065, 1085 (D. Haw. 2000) (emphasis added); accord Hubbard v. 7-Eleven, Inc., 433 F. Supp.

23   2d 1134, 1138 (S.D. Cal. 2006).  The Ninth Circuit confirmed this requirement in its recent Lopez

24   decision addressing for the first time in this circuit the burdens of proof on the issue of a barrier's

25   "readily achievable" removal.  See Lopez, 974 F.3d at 1034 ("[T]o prevail on his discrimination

26   claim [under § 12182(b)(2)(A)(iv)], Lopez must establish . . . that [the defendant] failed to alter

27   the restroom door when doing so was readily achievable . . . ." (emphasis added)).  However, the

28   Lopez decision also repeatedly and conclusively states that a barrier not being readily removable

1    is an "affirmative defense."  See id. at 1036 (stating that §§ 12182(b)(2)(A)(iv) and (v) "place the

2    ultimate burden on the <u>defendant</u> to prove the <u>affirmative defense</u> that removal of an architectural

3    barrier is not readily achievable" (emphases in <u>Lopez</u>)), and at 1035 (noting that "it is clear that

4    the defendant bears the ultimate burden of proving the affirmative defense").  <u>Lopez</u>'s seemingly

5    conflicting statements—that plaintiff must "establish" that an alteration was readily achievable,

6    but that non-readily-achievable removal is an affirmative defense—leaves it somewhat unclear

7    whether or not a barrier's ready removability is an element of plaintiff's prima facie case which

8    must be plead in the complaint.

9            Because <u>Lopez</u> was an appeal from summary judgment for the defendant, the Ninth

10    Circuit had no occasion to address the <u>pleading</u> requirements for plaintiff to state a claim of

11    barrier-related discrimination.  Rather, <u>Lopez</u> focused entirely on answering the question of

12    which party has the burden of <u>proving</u> whether the barrier's removal is "readily achievable."  <u>See</u>

13    <u>id.</u> at 1034 ("Our court has not decided which party bears the burden to <u>establish</u> that removal of

14    an architectural barrier is or is not readily achievable." (emphasis added)).  The Ninth Circuit

15    answered that question by adopting a burden-shifting framework similar to the Tenth Circuit's

16    longstanding <u>Colorado Cross</u> framework, but with a more lenient evidentiary standard used by the

17    Second Circuit.  <u>See id.</u> at 1035 (joining approach from <u>Roberts v. Royal Atl. Corp.</u>, 542 F.3d

18    363, 373 (2d Cir. 2008), which slightly tweaked the test established in <u>Colorado Cross Disability</u>

19    <u>Coalition v. Hermanson Family Limited Partnership</u>, 264 F.3d 999 (10th Cir. 2001)).

20            Under the general <u>Colorado Cross</u> framework adopted by the Ninth Circuit in <u>Lopez</u>,

21          the plaintiff "must initially present evidence tending to show that the
      suggested method of barrier removal is readily achievable under the

22          particular circumstances."  [<u>Colo. Cross</u>, 264 F.3d] at 1002.  If the
          plaintiff meets that initial burden, the defendant "then bears the

23          ultimate burden of persuasion that barrier removal is not readily
          achievable."  <u>Id.</u> at 1002–03.  In other words, the defendant "bears

24          the ultimate burden of persuasion regarding its affirmative defense
          that a suggested method of barrier removal is not readily achievable."

25          <u>Id.</u> at 1006.

26    <u>Lopez</u>, 974 F.3d at 1035 (emphases omitted).  The Ninth Circuit declined to adopt the Tenth

27    Circuit's heavy standard for what evidence a plaintiff must present to meet the initial burden of

28    proof and shift the burden to the defendant.  <u>See id.</u> at 1038 (reasoning that the Tenth Circuit's

6

1  requirement for plaintiffs to provide "precise cost estimates" and "a specific design" regarding

2  their proposed accommodation, Colo. Cross, 264 F.3d at 1009, would be "asking too much of

3  plaintiffs," considering defendants' superior knowledge of their own facilities).  Instead, the

4  Ninth Circuit adopted the Second Circuit's standard that "to satisfy their initial burden, ADA

5  plaintiffs must plausibly show how the cost of removing the architectural barrier at issue does not

6  exceed the benefits under the circumstances." Id. (emphasis added); see id. at 1040.  "If the

7  plaintiff makes a plausible showing that the requested accommodation is readily achievable, the

8  burden shifts to the defendant to counter the plaintiff's initial showing . . . ." Id. at 1038-39.

9       Importantly, this burden-shifting framework applies to the parties' evidentiary burdens at

10  the proof stage, i.e., at summary judgment or at trial.  See id. at 1040 ("[W]e adopt a burden-

11  shifting framework whereby plaintiffs have the initial burden at summary judgment of plausibly

12  showing that the cost of removing an architectural barrier does not exceed the benefits under the

13  particular circumstances" and "[t]he defendant then bears the ultimate burden of persuasion that

14  barrier removal is not readily achievable.") (emphasis added), and at 1035 ("plaintiff 'must

15  initially present evidence tending to show . . .'") (emphasis added) (quoting Colo. Cross, 264 F.3d

16  at 1002).

17       Lopez does not squarely answer whether a plaintiff proceeding on an architectural barrier

18  theory must plead in the complaint that a barrier's removal is readily achievable in order to state a

19  claim.  Lopez's description of a barrier's difficult removability as "an affirmative defense" that

20  the defendant ultimately must prove seems to suggest that the plaintiff need not plead anything at

21  all about whether removal is readily achievable.  See U.S. Commodity Futures Trading Comm'n

22  v. Monex Credit Co., 931 F.3d 966, 972 (9th Cir. 2019) (noting importance of distinction

23  between a claim element and an affirmative defense "because Rule 8 does not require plaintiffs to

24  plead around affirmative defenses").  At the same time, Lopez established that plaintiffs do bear

25  an initial burden of production on this affirmative defense at summary judgment.  974 F.3d

26  at 1035.  This is because "only if the plaintiff first makes a plausible showing that the barrier

27  removal is readily achievable, does the defendant then have to negate that showing and prove that

28  the removal is not readily achievable." Id. at 1036.

1     Here, plaintiff argues that he need not plead the sales counter barrier's ready removability

2  because the difficulty of barrier removability is entirely an affirmative defense, which defendant

3  waived by not appearing in this action and therefore not raising it.  (ECF No. 19.1 at 9, citing

4  Wilson v. Haria & Gogri Corp., 479 F. Supp. 2d 1127, 1133 & n.7 (E.D. Cal. 2007).)  See Corbin

5  v. Time Warner Ent.-Advance/Newhouse P'ship, 821 F.3d 1069, 1079 (9th Cir. 2016) ("If a party

6  seeks to assert an affirmative defense, the party 'must affirmatively state' that defense in a

7  responsive pleading." (quoting Fed. R. Civ. P. 8(c)(1))).  Judge Karlton deciding a motion for

8  summary judgment in Wilson held that "while [the] defendant would ordinarily be entitled to

9  prove that the removal of the alleged architectural barriers is not 'readily achievable,'" "this is an

10  affirmative defense, which defendant has waived" by failing to plead that affirmative defense in

11  its answer.  479 F. Supp. 2d at 1133 & n.7.  Thus, in Wilson, the plaintiff's failure to present any

12  evidence regarding barrier removability did not preclude summary judgment in his favor.  Id. at

13  1133 n.7 ("While plaintiff has not come forward with any evidence regarding barrier removal, he

14  need not do so where such evidence would be unnecessary, given defendant's waiver.").

15     Some courts evaluating motions for default judgment similar to the instant one criticize

16  plaintiff's counsel (which represents many ADA plaintiffs across the state) for continuing to rely

17  on Wilson's waiver rule in the wake of Lopez, which plaintiff's counsel's filings routinely fail to

18  cite at all.[3]  See, e.g., Whitaker v. Prime Oil Mgmt., L.L.C., 2021 WL 4353246, at *4-5 (C.D.

19  Cal. Apr. 8, 2021) (referring to Wilson as "bad law" and denying default judgment for failure to

20  allege "that the cost of removing the barriers at issue does not exceed the benefits under the

21  circumstances"); Johnson v. Tram Chim's Corp, 2021 WL 6129054, at *1 (N.D. Cal. Nov. 8,

22  2021) ("counsel should be concerned about misrepresenting the state of the law").  These courts,

23  like many others post-Lopez, assume without discussion that Lopez's "initial burden" applies

24  equally at the pleadings stage—which informs the liability analysis for obtaining default

25  judgment—as at summary judgment.  The undersigned finds this troubling, given that Lopez (and

26  the other circuit precedent on which it relied) adopted the burden-shifting framework purely

27

28
_____
[3] This despite the fact that plaintiff's counsel here, the Center for Disability Access, also
represented the plaintiff in Lopez both in the district court and on appeal.

1    within the summary judgment context.  See Lopez, 974 F.3d at 1040 ("[W]e adopt a burden-

2    shifting framework whereby plaintiffs have the initial burden at summary judgment of plausibly

3    showing that the cost of removing an architectural barrier does not exceed the benefits under the

4    particular circumstances." (emphasis added)).

5         The concept of burden shifting is foreign to the evaluation of the sufficiency of a

6    complaint, which is the court's task when reviewing a motion for default judgment.  See Danning

7    v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978) (the question on default liability is "whether the

8    allegations in the complaint are sufficient to state a claim on which the [plaintiff] may recover");

9    Philip Morris USA, Inc. v. Castworld Prod., Inc., 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("The

10   second two Eitel factors require that a plaintiff state a claim on which the [plaintiff] may

11   recover." (internal quotation omitted)); see also Surtain v. Hamlin Terrace Found., 789 F.3d 1239,

12   1245 (11th Cir. 2015) (characterizing a motion for default judgment as a "reverse motion to

13   dismiss for failure to state a claim").  Moreover, it seems a tall order to require a plaintiff to

14   determine before filing the complaint—without the benefit of discovery—what the cost of barrier

15   removal might be.  See Lopez, 974 F.3d at 1038 (adopting Second Circuit's lesser evidentiary

16   standard because "defendants have more knowledge and information regarding their own

17   facilities" than do plaintiffs).

18        Thus, the undersigned does not view Wilson, on its own, as "bad law" after Lopez.  Given

19   that non-readily achievable removal is an affirmative defense, it should be equally true after

20   Lopez as before that a defendant's failure to appear and plead that affirmative defense in its

21   answer waives that defense at summary judgment.  Nevertheless, the undersigned agrees that

22   Wilson's waiver rule does not translate to the pleadings / default judgment context to absolve the

23   plaintiff of needing to plead anything at all about a barrier's removability.

24        Rather, the phrasing of the applicable statute, 42 U.S.C. § 12182(b)(2)(A)(iv)-(v),

25   combined with the Ninth Circuit's treatment of barrier removability as a special type of

26   affirmative defense for which the plaintiff bears an initial burden of production at summary

27   judgment, leads the undersigned to conclude that an ADA plaintiff must plausibly plead in the

28   complaint that the barrier's removal is readily achievable.  As parsed in Lopez,

                                              9

1

2

3

4

> [s]ubsection (iv) starts by requiring defendants to remove architectural barriers if that removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Subsection (v), in turn, offers the defendant an opportunity to avoid liability by "demonstrat[ing] that the removal of a barrier under clause (iv) is <u>not</u> readily achievable[.]" <u>Id.</u> § 12182(b)(2)(A)(v).

5   974 F.3d at 1036 (emphasis and alterations in <u>Lopez</u>).  The language of subsection (b)(2)(A)(iv)

6   places the onus on plaintiffs in the first instance to assert that removal is readily achievable.  <u>See</u>

7   <u>id.</u> ("<u>[O]nly if</u> the plaintiff first makes a plausible showing that the barrier removal is readily

8   achievable, does the defendant then have to negate that showing and prove that the removal is not

9   readily achievable.").  Subsection (b)(2)(A)(iv)'s requirement of removal "if that removal is

10  readily achievable" is what led the Ninth Circuit (and every other circuit to address the issue) to

11  place an initial burden on plaintiff on this issue at summary judgment, and it also motivates the

12  conclusion that plaintiff must plead in the complaint something to plausibly suggest that barrier

13  removal <u>is</u> readily achievable.  Otherwise, there would be nothing to prompt the defendant to

14  plead as an affirmative defense that removal is <u>not</u> readily achievable.

15      Still, the plaintiff's pleading burden is low, and the undersigned sees no reason it should

16  equate to the plaintiff's evidentiary burden of production at summary judgment.  <u>See Marradi v.</u>

17  <u>K&W Realty Inv. LLC</u>, 212 F. Supp. 3d 239, 245 (D. Mass. 2016) ("Whether plaintiff can

18  ultimately carry his burden of production" as to readily achievable removal is "not material to the

19  question whether the complaint has adequately alleged a prima facie claim under the statute."

20  (quoting <u>Melo v. S. Broadway L. Realty Tr.</u>, 2016 WL 393258, at *2 (D. Mass. Feb. 1, 2016)

21  (alterations omitted)); <u>Flaum v. Colonial Williamsburg Foundation</u>, 2012 WL 5879128, *6 (E.D.

22  Va. Nov. 21, 2012) ("Whatever the standard regarding the burden of production, the 'readily

23  achievable' inquiry is premature at the pleading stage.  The law does not require that Plaintiff

24  request some specific form of modification as a prerequisite to a valid ADA claim.").  Plaintiffs

25  are not required to come to court armed with a full proposal for the cost efficiency of barrier

26  removal.

27      Plaintiff here alleges: "The barriers identified above [(sales counters inaccessible to

28  wheelchair users)] are easily removed without much difficulty or expense.  They are the types of

1    barriers identified by the Department of Justice as presumably readily achievable to remove and,

2    in fact, these barriers are readily achievable to remove."  (FAC ¶ 19.)  Although plaintiff does not

3    cite the regulation to which he refers in either the complaint or the motion for default judgment,

4    the court understands this as a reference to 28 C.F.R. § 36.304(b), which lists among its non-

5    exclusive "[e]xamples of steps to remove barriers":  "(3) Repositioning shelves" and

6    "(4) Rearranging tables, . . . , and other furniture."  The Ninth Circuit recognizes this regulation as

7    listing examples of barrier removals that are "likely to be readily achievable."  Molski v. M.J.

8    Cable, Inc., 481 F.3d 724, 730 (9th Cir. 2007) ("Federal regulations clarify which barrier

9    removals are likely to be readily achievable and provide examples in 28 C.F.R. § 36.304.").

10   Courts regularly treat overly high sales counters as falling within § 36.304(b)(3)'s example of

11   repositioning shelves.  See Johnson v. Wayside Property, Inc., 41 F. Supp. 3d 973, 977 (E.D. Cal.

12   2014) (describing DOJ regulation as covering removal of "an excessively high transaction

13   counter" and citing § 36.304(b)(3)); Johnson v. Dhillon, 2015 WL 5834799, at *3 (E.D. Cal.

14   Oct. 1, 2015).

15          While § 36.304 does not necessarily establish a presumption that such forms of barrier

16   removal are readily achievable, it does make their removal plausibly readily achievable.  See

17   Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1011 (C.D. Cal. 2014) (pre-Lopez but applying

18   Colorado Cross burden-shifting framework to hold pleadings sufficient to award default judgment

19   based on allegations that the defendant "can easily remove the architectural barriers at [the store]

20   without much difficulty or expense" and given that the subject barriers were the type listed as

21   examples of readily achievable steps in 28 C.F.R. § 36.304(b)); Acosta v. Perez, 2021 WL

22   3910543, at *8 (E.D. Cal. Sept. 1, 2021) (finding sufficient for purposes of default judgment

23   allegation that removal of barrier described in federal regulations was readily achievable), report

24   and recommendation adopted, 2021 WL 4461536 (E.D. Cal. Sept. 29, 2021); Johnson v. Garlic

25   Farm Truck Ctr. LLC, 2021 WL 2457154, at *6 (N.D. Cal. June 16, 2021) (finding allegations

26   identical to those in the FAC "sufficient to meet the readily achievable element at the default

27   judgment stage" and collecting cases holding same); Johnson v. In Suk Jun, 2020 WL 6507995,

28   at *5 (N.D. Cal. Nov. 5, 2020).  Therefore, despite the conclusory nature of plaintiff's allegations,

11

1   the undersigned finds them sufficient to plausibly plead that it would be readily achievable to

2   lower a portion of the sales counter or add an adjacent lower counter.

3          That is all a plaintiff must do at the pleadings stage.  The undersigned departs from the

4   predominating practice among district courts—including those just cited—of finding on default

5   judgment motions that a complaint does or does not satisfy the plaintiff's "initial burden" under

6   Lopez (or Colorado Cross, pre-Lopez).  As discussed at length above, the burden-shifting

7   framework does not apply until the court is evaluating evidence.  All the plaintiff must do at the

8   pleadings stage to proceed under § 12182(b)(2)(A)(iv) is plausibly allege that the barrier's

9   removal is readily achievable.  Doing so does not "shift the burden" to the defendant, except

10  insofar as it apprises the defendant of the need to plead the applicable affirmative defense to the

11  contrary.  If the defendant fails to so plead, the plaintiff is effectively entitled to judgment on the

12  pleadings as to that claim—assuming he pleads the preceding elements of a qualifying disability,

13  a covered public accommodation, and an architectural barrier encountered.

14         Such is the posture of this case.  As found at the outset, plaintiff adequately pleads that he

15  is disabled within the meaning of the ADA, and that Sheikh Jewelers is a covered sales

16  establishment.  Further, he identifies an architectural barrier he personally encountered that does

17  not comply with ADA guidelines.  The ADA Standards for Accessible Design require that a

18  portion of "sales counters" must be no higher than 36 inches.  ADA Standards for Accessible

19  Design §§ 904.4, 904.4.1 (2010).  Plaintiff alleges there was no sales counter at Sheikh Jewelers

20  that was 36 inches or less in height.[4]  (FAC ¶ 12.)  Finally, as just discussed, plaintiff adequately

21  pleads that removal of this sales counter barrier was readily achievable.  Therefore, without

22  addressing whether plaintiff satisfied his "initial burden" of production, the undersigned simply

23  finds that plaintiff sufficiently pleaded his ADA Title III discrimination claim—which is all that

24  is required to satisfy Eitel factors 2 and 3 in support of default liability.

25  ///

26  ///

27

28  _____
    [4] Plaintiff attaches photographs and a declaration from an investigator showing that the counters
    were uniformly 43.7 inches tall.  (ECF Nos. 19.5 ¶¶ 3-4, 19.6 at 4.)

1

                    b.      *California's Unruh Civil Rights Act*

2          California's Unruh Civil Rights Act provides: "All persons within the jurisdiction of this

3   state are free and equal, and no matter what their sex, race, color, religion, ancestry, national

4   origin, disability, medical condition, genetic information, marital status, sexual orientation,

5   citizenship, primary language, or immigration status are entitled to the full and equal

6   accommodations, advantages, facilities, privileges, or services in all business establishments of

7   every kind whatsoever."  Cal. Civ. Code § 51(b).  As expressly provided by statute, a violation of

8   the ADA also constitutes a violation of the Unruh Civil Rights Act.  Cal. Civ. Code § 51(f); see

9   also Munson v. Del Taco, Inc., 46 Cal. 4th 661, 664-65 (2009).  Here, because plaintiff's FAC

10  properly alleges a prima facie claim under the ADA, plaintiff also properly alleges facts

11  supporting a claim under the Unruh Civil Rights Act.

12         Accordingly, the second and third Eitel factors favor the entry of a default judgment on

13  both the ADA and Unruh Act claims.

14         3.   The amount of damages is proportional to plaintiff's harm.

15         Next, the court considers "the amount of money at stake in relation to the seriousness of

16  Defendant's conduct."  PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see, e.g., Philip Morris, 219

17  F.R.D. at 500.  In this case, plaintiff seeks injunctive relief; statutory damages under the Unruh

18  Civil Rights Act corresponding to one (1) obstructed visit to Sheikh Jewelers ($4,000 minimum

19  statutory damages per visit); and attorneys' fees and costs in the amount of $3,077.  Although the

20  court more closely scrutinizes the requested attorneys' fees and costs below, the court does not

21  find the overall sum of money at stake so large or excessive as to militate against the entry of

22  default judgment, particularly when reduced for the reasons to be discussed.  This factor favors

23  the entry of a default judgment.

24         4.   The material facts are not in dispute.

25         Because the court may assume the truth of well-pleaded facts in the complaint (except as

26  to damages) following the clerk's entry of default, there is no likelihood that any genuine issue of

27  material fact exists.  See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D.

28  Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court

1    clerk enters default judgment, there is no likelihood that any genuine issue of material fact

2    exists."); accord Philip Morris, 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177.  As

3    such, the court concludes that the fifth Eitel factor favors a default judgment.

4           5.   The court sees no excusable neglect.

5           Here, there is no indication in the record that defendant's default was due to excusable

6    neglect.  See Pepsi Co, Inc., 238 F. Supp. 2d at 1177.  Defendant received ample notice of this

7    lawsuit.  First, when Sheikh Jewelers itself was named as the defendant in the original complaint,

8    plaintiff effected personal service on the corporation's registered agent, Fajar Sheikh.  (See ECF

9    Nos. 4, 19.7 at 3.)  Then, after amending the complaint to name defendant Zafar Sheikh (doing

10   business as Sheikh Jewelers), plaintiff properly effected substituted service on Mr. Sheikh by

11   leaving copies of the FAC and summons with a "competent person apparently in charge" at

12   Mr. Sheikh's usual place of business and then mailing a copy to the same address thereafter.

13   (ECF No. 8.)  See Cal. Civ. Proc. § 415.2(b) (explaining the requirements for substituted service);

14   Fed. R. Civ. P. 4(e)(1) (allowing for service of an individual by "following state law for serving a

15   summons in an action brought in courts of general jurisdiction in the state where the district court

16   is located or where service is made.").  Plaintiff also served defendant, by mail, with this motion

17   for default judgment and the court's order providing an additional opportunity to respond to the

18   default.  (See ECF Nos. 20, 21, 22.)  Defendant's failure to respond therefore is not likely due to

19   excusable neglect.  Accordingly, this Eitel factor favors the entry of a default judgment.

20           6.   Other factors outweigh the policy favoring disposition on the merits.

21           "Cases should be decided upon their merits whenever reasonably possible."  Eitel, 782

22   F.2d at 1472.  However, district courts conclude with regularity that this policy, standing alone, is

23   not dispositive, especially where a defendant fails to appear or defend itself in an action.

24   PepsiCo, Inc., 238 F. Supp. 2d at 1177; see, e.g., Craigslist, Inc. v. Naturemarket, Inc., 694 F.

25   Supp. 2d 1039, 1061 (N.D. Cal. 2010).  Here, although the undersigned acknowledges the policy

26   in favor of decisions on the merits—and consistent with existing policy would prefer this case be

27   resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

28   ///

In sum, after considering and weighing all the <u>Eitel</u> factors, the court concludes that plaintiff is entitled to a default judgment against defendant, and recommends a default judgment be entered.

**B.   <u>Terms of the Judgment to be Entered</u>**

After determining that a party is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered.  Plaintiff seeks injunctive relief, statutory damages, attorneys' fees, and costs.

1.   <u>Injunctive Relief</u>

Because plaintiff satisfactorily alleged his ADA claim, the court recommends plaintiff be granted injunctive relief, to remedy the architectural barriers.  <u>See</u> 42 U.S.C. § 12188(a)(2).

2.   <u>Statutory Damages</u>

Plaintiff also requests statutory damages for the Unruh Civil Rights Act violation, in the amount of $4,000, which corresponds to one (1) obstructed visit to Sheikh Jewelers.  <u>See</u> Cal. Civ. Code § 52(a).  The Unruh Civil Rights Act permits $4,000 in statutory damages for each occasion the plaintiff is denied equal access.  <u>Id.</u>  "Proof of actual damages is not a prerequisite to the recovery of statutory minimum damages."  <u>Botosan v. Paul McNally Realty</u>, 216 F.3d 827, 835 (9th Cir. 2000).  To recover statutory minimum damages, a plaintiff need only show he was denied full and equal access, not that he was wholly excluded from enjoying defendant's services. <u>Id.</u>  "A plaintiff is denied full and equal access only if the plaintiff personally encountered the violation on a particular occasion, or the plaintiff was deterred from accessing a place of public accommodation on a particular occasion."  Cal. Civ. Code § 55.56(b).  Because plaintiff personally encountered the inaccessible sales counters at Sheikh Jewelers on one occasion, the court recommends plaintiff be awarded minimum statutory damages of $4,000.

3.   <u>Attorneys' Fees and Costs</u>

Lastly, plaintiff requests attorneys' fees and costs.  The statutes at issue specifically contemplate the award of attorneys' fees and costs.  <u>See</u> 42 U.S.C. § 12205; Cal. Civ. Code § 52(a).  Thus, the only question is whether the requested amount of attorneys' fees and costs ($3,077.00) is reasonable.

15

1    Plaintiff requests $857.00 in filing fees, investigator fees, and service costs, which are

2    reasonable and should be awarded.  (ECF No. 19.3, at 11-12.)  See 42 U.S.C. § 12205 (allowing

3    the court, in its discretion, to award prevailing party in ADA action "a reasonable attorney's fee,

4    including litigation expenses, and costs"); Kraus v. Ding Chaun Chen, 2021 WL 856425, at *5

5    (E.D. Cal. Mar. 8, 2021), F&R adopted Apr. 13, 2021 (finding court filing fees, costs of service,

6    and an expert witness investigator fee to be compensable expenses under § 12205).

7    Plaintiff also seeks $2,220.00 in attorneys' fees for work performed by his legal counsel,

8    Center for Disability Access (a division of Potter Handy, LLP).  (ECF Nos. 19.1 at 14-20, 19.3

9    at 10-11.)  The ADA and California's Unruh Act both entitle plaintiff to attorneys' fees, at the

10   court's discretion.  See 42 U.S.C. § 12205 (providing district courts with authority to award

11   reasonable attorneys' fees to the prevailing party in an ADA action); Cal. Civ. Code § 52 (noting

12   attorneys' fees for Unruh Act violations may be determined by the court).  Attorneys' fee awards

13   must account for work of non-attorneys, including paralegals and law clerks "whose labor

14   contributes to the work product for which an attorney bills her client."  Missouri v. Jenkins, 491

15   U.S. 274, 285 (1989).  These awards do not include fees for "purely clerical or secretarial tasks,"

16   however.  Id. at 288 n.10.  Courts calculate an attorneys' fee award using the lodestar method,

17   where the "lodestar" amount is the sum of the number of hours reasonably expended on the

18   matter multiplied by a reasonable hourly rate.  Ferland v. Conrad Credit Corp., 244 F.3d 1145,

19   1146–48 (9th Cir. 2001).  The party seeking attorneys' fees bears the burden of producing

20   sufficient evidence that "the requested rates are in line with those prevailing in the community for

21   similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v.

22   Stenson, 465 U.S. 886, 895 n.11 (1984).

23   The attorneys' fees requested in this case comprise: 0.8 hours of work for attorney Mark

24   Potter at an hourly rate of $650[5]; 0.1 hours of work for attorney Amanda Seabock at an hourly

25   rate of $500; 3.0 hours of work for attorney Tehniat Zaman at an hourly rate of $400; 1.6 hours of

26

27   _____
     5 The billing invoice lists Mr. Potter's hourly rate as $650.  (ECF No. 19.3 at 10.)  However, the
     supporting declaration refers to an hourly rate of $595 for Mr. Potter.  (Id. ¶ 10.)  This
28   discrepancy is immaterial, as the court finds both rates excessive.

work for an individual named Marcus Handy, whose position is not specified, at an hourly rate of $200; and a total of 1.3 hours of work spread across six individuals whose positions are not specified (Andrew Sheaffer, Deepa Shetty, Geraldine Manalo, Herman Fernandes, Leonardo Pahuriray, and Tanpreet Pannu) at an hourly rate of $100 each.  (ECF No. 19.3 at 10-11.)  In total, plaintiff is requesting $2,220.00 in attorneys' fees.  (Id. at 11.)

Plaintiff submits the declaration of attorney Russel Handy (who billed no hours for this case) in support of the hourly rates requested for plaintiff's attorneys Mr. Potter ($650), Ms. Seabock ($500), and Ms. Zaman ($400).  (ECF No. 19.3 ¶¶ 10-14.)  Although the number of hours these three attorneys spent on the case are reasonable, the court finds each attorney's hourly rates to be excessive in light of prevailing market rates in the Sacramento Division of the Eastern District of California.  See Camacho v. Bridgeport Financial, Inc., 523 F.3d 973, 979 (9th Cir. 2008) (courts look to prevailing rates for the "relevant community" which is the forum in which the district sits).

Plaintiff's counsel critiques courts in this district for historically "holding the line" by awarding Center for Disability Access attorneys reduced hourly rates solely based on the Eastern District's previous awards to the firm.  (ECF No. 19.1 at 16, citing Roberts v. City of Honolulu, 938 F.3d 1020, 1024 (9th Cir. 2019).)  However, "[i]t is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate."  Roberts, 938 F.3d at 1024. Mr. Handy's billing declaration in this case (as noted in prior cases) does not provide any evidence of the prevailing market rate for this district, or any other.  See, e.g., Johnson v. Shree Rang, LLC, 2020 WL 5202068, at *4 n.4 (E.D. Cal. Sept. 1, 2020) (finding recent fee awards for CDA attorneys persuasive where Mr. Handy's declaration was "devoid of any evidence with respect to the prevailing local rate for this district"), F&R adopted Oct. 5, 2020; Kraus v. Rattu, 2020 WL 526105, at *7 (E.D. Cal. Feb. 3, 2020) (relying on recent fee awards in district where CDA "declaration alone does not establish the prevailing market rate"), F&R adopted Mar. 17, 2020.  Accordingly, in determining a reasonable rate, the undersigned considers both Mr. Handy's declaration and the following recent fee awards to CDA attorneys in this district. See O'Campo v. Ghoman, 789 Fed. Appx. 623, 624 (9th Cir. 2020) (where plaintiff "failed to

1   submit 'satisfactory' evidence of current market rates" the court "permissibly relied on recent fee

2   awards in the district to determine the prevailing rate in similar cases for attorneys with similar

3   experience").

4         "[T]he vast majority of recent cases from this district have concluded that in light of

5   prevailing rates within this district for comparable litigation, hourly rates of $300 for

6   Mr. Potter . . . , $250 for mid-level attorneys, and $150 for associates are reasonable." <u>Kraus</u>,

7   2021 WL 856425, at *4 (collecting cases); <u>see</u> <u>Johnson v. Shree Rang, LLC</u>, 2020 WL 5202068,

8   at *4 (E.D. Cal. Sept. 1, 2020), <u>F&R adopted</u> Oct. 5, 2020; <u>Johnson v. Sweet Spark, Inc.</u>, 2020

9   WL 1324507, at *5 (E.D. Cal. March 20, 2020) (finding reasonable hourly rates of $300 for

10   partners, $250 for senior attorneys, and $150 for junior attorneys) (citing <u>Johnson v. Hey Now</u>

11   <u>Properties, LLC</u>, 2019 WL 586753, at *3 (E.D. Cal. Feb. 13, 2019)); <u>Johnson v. Wen Zhi Deng</u>,

12   2019 WL 1098994, at *2 (E.D. Cal. Mar. 8, 2019) (Mueller, J.) ("[T]he rates outlined in <u>Hey</u>

13   <u>Now Properties</u> are the appropriate, prevailing rates in this district . . . ."). The court finds these

14   cases to be persuasive because they are recent, comparable cases from this district and involved a

15   careful consideration of prevailing market rates for routine disability access cases in the

16   Sacramento Division of the Eastern District of California. By contrast, plaintiff's reliance on fee

17   awards in the Central, Northern, and Southern Districts of California, as well as certain California

18   state courts, is misplaced, because those fee awards are not instructive with respect to prevailing

19   market rates in this federal district.[6] Instead, the court concludes that an hourly rate of $300 is

20   appropriate for founding partner Mr. Potter, along with an hourly rate of $250 for Ms. Seabock

21   (who has practiced law for more than 10 years) and $150 for Ms. Zaman (who has practiced law

22   for "more than five years"). (<u>See</u> ECF No. 19.3 ¶¶ 10, 13, 14.)

23         Plaintiff's declaration does not identify or describe the experience of any of the seven

24   other individuals listed on the billing invoice, beyond these three attorneys. Based on the tasks

25

26

27   [6] The court rejects plaintiff's invitation to apply out-of-market rates because of the alleged dearth of experienced, "serial" ADA litigators in the Eastern District. (<u>See</u> ECF No. 19.1 at 17-18.) This is routine disability access litigation in an unopposed action and does not meet the standards

28   for applying out-of-market rates.

each biller performed and the $200 and $100 hourly rates requested for them,[7] it is likely these individuals are paralegals.  (See ECF No. 19.3 at 10-11.)  The court would be within its discretion to deny plaintiff fees for these unidentified individuals altogether.  See Kraus, 2021 WL 856425, at *4 ("The court will not award fees for hours completed by attorneys/paralegals for whom counsel did not provide information, because the court has no way to justify the lodestar amount.").  However, the undersigned takes notice of prior cases identifying many of these individuals as paralegals, and finds the limited billing descriptions sufficient to justify a paralegal lodestar rate.  See, e.g., Johnson v. Huong-Que Rest., 2022 WL 658973, at *5 (N.D. Cal. Mar. 4, 2022) (applying Northern District rates for paralegals including Marcus Handy and other staff).

With no evidence from plaintiff's counsel regarding either the prevailing paralegal market rate or the experience of the various support staff, the court awards a prevailing market rate of $75 per hour for these unidentified billers based on recent comparable cases.  See Moreno v. City of Sacramento, 534 F.3d 1106, 111 (9th Cir. 2008) (explaining court's obligation to determine whether proposed hourly rate is reasonable in the community for similar work); see, e.g., Englert v. City of Merced, 2020 WL 2215749, at *13 (E.D. Cal. May 7, 2020) (rejecting paralegal requested rate of $125 to $150 per hour and awarding rate of $75 when plaintiffs "provided no information on the experience of the paralegals").

Accordingly, the court recommends awarding the following rates and hours to grant plaintiff reduced attorneys' fees of $932.50.

///

///

///

///

///

---

[7] Representative tasks performed by these unidentified billers include: "Completed step three on prefiling checklist: (Review Investigator report, findings and photos to confirm claims and greenlight complaint drafting or give investigator further instructions)"; "phone call"; "complaint drafting"; and "Preparing answer or default letter."  (ECF No. 19.3 at 10-11.)

| Biller | Requested Rate | Awarded Rate | Awarded Hours | Total |
|---|---|---|---|---|
| Andrew Sheaffer | $100 | $75 | 0.3 | $    22.50 |
| Mark Potter | $650 | $300 | 0.8 | $  240.00 |
| Deepta Shetty | $100 | $75 | 0.3 | $    22.50 |
| Geraldine Manalo | $100 | $75 | 0.1 | $      7.50 |
| Marcus Handy | $200 | $75 | 1.6 | $  120.00 |
| Leonardo Pahuriray | $100 | $75 | 0.1 | $      7.50 |
| Tehniat Zaman | $400 | $150 | 3.0 | $  450.00 |
| Tanpreet Pannu | $100 | $75 | 0.3 | $    22.50 |
| Amanda Seabock | $500 | $250 | 0.1 | $    25.00 |
| Herman Fernandes | $100 | $75 | 0.2 | $    15.00 |
|  | **Total** |  |  | **$  932.50** |

Total Fees & Expense Award

In total, the court recommends awarding plaintiff attorneys' fees, litigation expenses, and costs in the amount of $1,789.50 ($932.50 + $857).

## RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1.      Plaintiff's motion for default judgment (ECF No. 19) be GRANTED;

2.      Judgment be entered in plaintiff's favor and against defendant;

3.      Plaintiff be awarded statutory damages in the amount of $4,000.00;

4.      Plaintiff be awarded attorneys' fees, litigation expenses, and costs in the amount of $1,789.50;

5.      Plaintiff be granted an injunction requiring defendant to provide an accessible transaction counter at the business establishment named Sheikh Jewelers, located at 1151 Galleria Blvd., Roseville, California, in compliance with the ADA and the ADA Accessibility Guidelines; and

6.      The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with

///

the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

## **ORDER**

IT IS ALSO HEREBY ORDERED that plaintiff shall forthwith serve a copy of this order and findings and recommendations on defendant by U.S. mail at his last-known address(es).

Dated:  April 27, 2022

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

whit.493

21